UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRIDGITTE PRINCE,
    Plaintiff,

v.

JEFFERSON JELLY, et al.,
    Defendants.

No. 3:17-cv-01284 (SRU)

# RULING AND ORDER

Bridgitte Prince sued her former attorney, Jefferson D. Jelly, and his paralegal, Ruth Martin, for violation of her First and Fourteenth Amendment rights under 42 U.S.C. § 1983. Jelly and Martin have moved to dismiss on the basis that they are not "state actors" amenable to suit under section 1983. I agree that Jelly and Martin did not act "under color of law" and cannot be sued under section 1983. Therefore, I dismiss Prince's complaint for failure to state a claim.

**I.    Standard of Review**

A motion to dismiss for failure to state a claim is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a motion to dismiss, I must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and

"enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## II. Background

Bridgitte Prince retained the Law Office of Jefferson D. Jelly, a personal injury firm located in West Hartford, Connecticut, in February or March of 2016[1] to represent her in connection with injuries sustained in a car accident. *See* Compl., Doc. No. 1, at 3. Prince was represented by Attorney Jefferson D. Jelly and Paralegal Ruth Martin. Prince alleges that Jelly and Martin took no action for months and ignored her requests that the firm withdraw from its representation. *Id.* After Prince contacted the Connecticut Statewide Grievance Committee, Jelly and Martin "reluctantly withdrew," but then "committed a series of violations" in a "blatant act of retaliation" against Prince. *Id.* Specifically, Prince claims that Jelly and Martin "continued to contact USAA Insurance . . . as if they represent[ed] a client, . . . submitted several liens on [her] settlement," and "filed for a $2,000.00 medical payment . . . without justification." *Id.* at 3–4.

---

[1] The parties disagree about whether the retainer agreement was signed in February or March of 2016, but the difference is immaterial.

On August 1, 2017, Prince filed a complaint in this court under 42 U.S.C. § 1983. *See id.* at 2. Prince asserts that Jelly's and Martin's actions violated rights protected by the First and Fourteenth Amendments to the United States Constitution. *Id.* at 3–4. She claims $250,000.00 in "compensatory and punitive damages." *Id.* at 5.

On August 18, 2017, Jelly and Martin moved to dismiss. Mot. Dismiss, Doc. No. 8. They principally contend that they are not "state actors" and did not "act under color of state law in providing private legal services" to Prince. *Id.* Asserting that their "private conduct is not subject to First Amendment and Fourteenth Amendment challenges under 42 U.S.C. § 1983," the defendants argue that Prince's complaint must be dismissed. *Id.*

## III. Discussion

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that [her] constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). Thus, in order to state a claim under section 1983, Prince must allege "both that [s]he has been deprived 'of a right secured by the "Constitution and laws" of the United States' and that the defendant[s] acted 'under color of any statute . . . of any State.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). "[A] person acts under color of state law only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Polk Cnty. v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Here, the defendants are subject to suit under section 1983 only if they "may fairly be said to be [ ] state actor[s]," such that their "allegedly unconstitutional

conduct is 'fairly attributable' to the state." *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003) (quoting *Am Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

"The determination of whether the specific conduct of which the plaintiff complains constitutes state action is a 'necessarily fact-bound inquiry,'" *id.* at 111–12 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001)), and "there are a host of factors that can bear on the fairness of an attribution of a challenged action to the State." *Fabrikant*, 691 F.3d at 207. For example, "the actions of a nominally private entity are attributable to the state" when:

> (1) the entity acts pursuant to the coercive power of the state or is controlled by the state ("the compulsion test");
>
> (2) [ ] the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ("the joint action test" or "close nexus test"); or
>
> (3) [ ] the entity has been delegated a public function by the state ("the public function test").'

*Sybalski v. Indep. Grp. Home Living Program*, 546 F.3d 255, 257 (2d Cir. 2008). "In final analysis the question is whether 'the conduct allegedly causing the deprivation of a federal right [can] be fairly attributable to the State.'" *NCAA v. Tarkanian*, 488 U.S. 179, 199 (1988) (quoting *Lugar*, 457 U.S. at 937).

I need not precisely identify which test applies here, because "it is well-established that . . . attorneys performing a lawyer's traditional functions as counsel . . . do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983." *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997) (public defenders); *see also, e.g.*, *Housand v. Heiman*, 594 F.2d 923, 924–25 (2d Cir. 1979) (per curiam) ("[P]ublic defenders or court-appointed defense attorneys do not act 'under color of law.'"); *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir.

1975) ("[S]tatus as an attorney . . . does [not] satisfy the test of state action that must be met before liability may be imposed pursuant to [section] 1983."); *DuBose v. Kelly*, 187 F.3d 999, 1003 (8th Cir. 1999) ("[T]he conduct of counsel generally does not constitute action under color of law."). Even though "[i]t is often said that lawyers are 'officers of the court,' . . . a lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law.'" *Polk Cnty.*, 454 U.S. at 318. "[P]rivately retained counsel['s] duty is not to the public at large," but rather to "serve the undivided interests of his client." *Ferri v. Ackerman*, 444 U.S. 193, 204 (1979). "Th[at] is essentially a private function . . . for which state office and authority are not needed." *Polk Cnty.*, 454 U.S. at 319. Hence, "[i]n the absence of specific claims of unlawful cooperation with state officials, an attorney engaged in civil litigation on behalf of a private client cannot be said to be acting under color of state law."[2] *Sullivan v. Stein*, 2004 WL 1179351, at *17 (D. Conn. May 21, 2004).

In an attempt to overcome the above precedent, Prince asserts that Jelly and Martin "act[ed] under the color of law" because they were "licensed by Connecticut." *See* Compl., Doc. No. 1, at 2. "But a private entity does not become a state actor for purposes of [section] 1983 merely on the basis of 'the private entity's creation, funding, licensing, or regulation by the government.'" *Fabrikant*, 691 F.3d at 207 (quoting *Cranley*, 318 F.3d at 112); *see also, e.g.*, *Hollander v. Copacabana Nightclub*, 624 F.3d 30, 34 (2d Cir. 2010) (per curiam) ("[A] liquor

---

[2] Most cases have addressed section 1983 claims against "public defenders" or other "court-appointed attorneys." *See, e.g.*, *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Housand v. Heiman*, 594 F.2d 923, 924–25 (2d Cir. 1979) (per curiam)). If lawyers who are "appointed by the state and paid with state funds" are not state actors, *see Rzayeva v. United States*, 492 F. Supp. 2d 60, 81 (D. Conn. 2007), then *a fortiori* a "private attorney" such as Attorney Jelly does "not act 'under color of law,'" either. *See Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir. 1975).

5

license is insufficient to establish state action."); *Crissman v. Dover Downs Entm't*, 289 F.3d 231, 243 (3d Cir. 2002) ("[S]tate licensing [is] not enough to make a private entity a state actor . . . ."); *Harvey v. Harvey*, 949 F.2d 1127, 1132 (11th Cir. 1992) ("[L]icensing and regulation are not enough to transform private [entities] into state actors for section 1983 purposes."). In *Polk County v. Dodson*, for instance, the Supreme Court stated that "[a]lthough lawyers are generally licensed by the States, 'they are not officials of government by virtue of being lawyers.'" 454 U.S. at 319 n.9 (quoting *In re Griffiths*, 413 U.S. 717, 729 (1973)). Judges of this court, as well, have held that "private attorneys do not act under color of state law and are not state actors simply by virtue of their state-issued licenses to practice law." *Sullivan*, 2004 WL 1179351, at *10. Thus, Prince is simply "wrong" to "assert[] that [Attorney Jelly]'s license to practice law makes him a state actor."[3] *Id.* at *12; *see Henderson v. Fisher*, 631 F.2d 1115, 1119 (3d Cir. 1980) (per curiam) ("Liability under 42 U.S.C. § 1983 cannot be predicated solely on the state's licensing of attorneys. Participation in a highly regulated profession does not convert a lawyer's every action into an act of the State or an act under color of state law.").

The actions of which Prince complains—that Jelly and Martin "continued to contact" the defendant after she asked that they withdraw their representation, that they "placed a lien on [her] settlement," and that they "filed a medical claim" with Prince's insurance company, Compl., Doc. No. 1, at 3–4—are all within "a lawyer's traditional functions as counsel" and "do[] not constitute action under color of law." *Rodriguez*, 116 F.3d at 66; *DuBose*, 187 F.3d at 1003. "Mere dissatisfaction with the outcome of [Jelly's and Martin]'s legal efforts . . . does not provide sufficient grounds for finding . . . that [Jelly and Martin]'s alleged conduct may be fairly

---

[3] Martin, a paralegal, does not need a license to practice law, and so she would not be a state actor even under Prince's incorrect theory.

treated as that of the State itself." *Sullivan*, 2004 WL 1179351, at *17. In short, "[b]ecause [Jelly and Martin are] not [ ] state actor[s], and [Prince] has not alleged sufficient facts to support the conclusion that [they] acted under color of state law, [Prince]'s § 1983 claims . . . must be dismissed." *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002).

Liberally construed to raise section 1983 conspiracy claims, Prince's complaint also fails. *Cf. Harrison v. City of New York*, 95 F. Supp. 3d 293, 323 (E.D.N.Y. 2015) ("Claims alleging conspiracies to violate civil rights are held to a heightened pleading standard."). Prince does not allege that Jelly and Martin "act[ed] under color of state law" by "willful[ly] participa[ting] in joint activity with the State or its agents." *See Betts v. Shearman*, 751 F.3d 78, 84 (2d Cir. 2014). Simply asserting that Jelly and Martin "placed a lien on [her] settlement" does not suffice,[4] Compl., Doc. No. 1, at 3, because even assuming that Jelly and Martin enforced the lien through a civil action, "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator" with state actors. *See Dennis v. Sparks*, 449 U.S. 24, 28 (1980). "Absent from [Prince]'s complaint are any factual allegations suggesting that [Jelly and Martin] conspired with" state actors, *Ciambriello*, 292 F.3d at 324, by exhibiting "some common goal to violate [Prince]'s rights." *Betts*, 751 F.3d at 85. Because Prince has not alleged any "agreement between private and public actors to violate [Prince]'s constitutional rights," she has not stated a plausible section 1983 conspiracy claim. *Id.*; *see Harrison*, 95 F. Supp. 3d at 329 ("Plaintiff's pleadings are insufficient to support a conspiracy claim against the [Law] Firm. Plaintiff does not allege that the [Law] Firm acted jointly with a state actor or conspired with a state actor to deprive Plaintiff of some constitutional right . . . .").

---

[4] Presumably, Jelly filed a "common-law charging lien," which is "placed on any money recovered or fund due the client at the conclusion of the lawsuit . . . in the amount of the attorney's fees." *See D'Urso v. Lyons*, 97 Conn. App. 253, 256 (2006).

It remains possible that Prince "pleads a sufficient claim of attorney malpractice under Connecticut law." *Housand*, 594 F.2d at 926; *cf. Bozelko v. Papastavros*, 323 Conn. 275, 283 (2016) ("[A] plaintiff alleging legal malpractice must prove all of the following elements: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages.") (emphasis and internal quotation marks omitted). Ordinarily, in view of the "obligat[ion] to construe a *pro se* complaint liberally," I would give Prince the "opportunity to amend [her] complaint." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam). Here, however, there would be no basis for federal jurisdiction over an amended complaint, because Prince's malpractice claim would not "aris[e] under" federal law, *see* 28 U.S.C. § 1331, and there is no diversity of citizenship (all the parties are residents of Connecticut). *See* 28 U.S.C. § 1332. Even had Prince brought a state law malpractice claim in her original complaint, "the unfavorable disposition of [her] federal claims at the early stages of [the] suit . . . w[ould] trigger the dismissal without prejudice of any supplemental state-law claims." *See Rossi v. Gemma*, 489 F.3d 26, 39 (1st Cir. 2007); *cf. Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ('[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.').

"Whatever cause of action [Prince] might have against [her] lawyer, whether sounding in professional malpractice, tort, or otherwise, is one of state law insufficient to vest a federal court with jurisdiction over the subject matter." *Fine*, 529 F.2d at 74. Because I would lack jurisdiction over any viable claims Prince might raise, repleading would be "futile." *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Therefore, I dismiss Prince's complaint without leave to amend in federal court, but without prejudice to filing a state law claim in state court.

## IV. Conclusion

Prince has not plausibly alleged that Jelly and Martin acted "under color of law" and cannot state a claim for violation of section 1983. I grant the defendants' motion to dismiss, without prejudice to filing a state law claim in state court.

The Clerk shall close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 20th day of November 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge